UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOUGLAS BADER, et al., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Civil Action No. 14-cv-575 (TSC) <br> ) |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION

Pending before the Court is defendant Air Line Pilots Association, International's ("ALPA") Motion to Transfer Venue. Upon consideration of the motion, the response and reply thereto, and for the following reasons, the Court GRANTS ALPA's Motion to Transfer Venue and orders that this case be transferred to the United States District Court for the Northern District of Illinois.

### I.    BACKGROUND

The plaintiffs, Douglas Bader, Charles Doyle, and Ralph J. Rina (collectively, "Plaintiffs") filed this action for damages and other relief on April 7, 2014. Plaintiffs seek to recover damages from ALPA for violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and allege other related state law claims. Plaintiff Bader is a resident of the state of Colorado; Doyle is a resident of the Commonwealth of Kentucky; and Rina is a resident of the state of Arizona. (ECF No. 1, Compl. ¶¶ 6-8)

The Plaintiffs are former pilots at Continental Airlines ("Continental"). (*Id.*) After reaching the mandatory retirement age (65 years) for line pilots mandated by the Fair Treatment

1

for Experienced Pilots Act, 49 U.S.C. § 44729, each of the Plaintiffs became Flight Instructor/Evaluators who trained and evaluated other pilots.  (ECF No. 1, Compl. ¶¶ 6-8)  Both line pilots and Flight Instructor/Evaluators are entitled to seniority, and Plaintiffs retained their position on the pilot seniority list as Flight Instructor/Evaluators after retiring as active pilots.  *Id.*

In May 2010, Continental and United Airlines ("United") announced board approval for the merger of the two airlines.  (*Id.* at ¶ 12)  In connection with the merger (consummated in October 2010), ALPA—the certified collective bargaining representative for the pilots of the merged airlines—negotiated and signed a new labor agreement with United (the United Pilot Agreement, or "UPA").  (*Id.* at ¶¶ 14, 16)  As part of the UPA, ALPA and United also signed a separate Letter of Agreement ("LOA") dated December 18, 2012.  (*Id.* at ¶ 17)  The LOA mandated that any person exceeding the federal age restriction for pilots would be removed from the seniority list, and that any Flight Instructor/Evaluator who had already reached (or within a specified period of time would reach) the federal age restriction for pilots could only remain a Flight Instructor/Evaluator for an additional 12 months after the signing of the LOA   (*Id.* at ¶¶ 18-21)  Plaintiffs allege that ALPA proposed and supported these provisions, the result of which was that Flight Instructor/Evaluators would be terminated from employment at age 65, and the provisions therefore discriminate against Plaintiffs solely because of their age.  (*Id.* at ¶¶ 29-31)

Three days after filing the present case, Plaintiffs filed a complaint in the Northern District of Illinois against United.  (ECF No. 8–2, Def's. Mot. to Transfer Ex. 1 (Compl., *Bader v. United Airlines, Inc.*, No. 14–cv–02589) ("N.D. Ill. Complaint"))  The N.D. Ill. Complaint also alleges violations of the ADEA based on the LOA, includes various state law claims, and contains many of the same factual allegations as the complaint in this case. *Compare* N.D. Ill. Complaint ¶¶ 44-117 (alleging that "United has adopted an arbitrary age limitation on Flight

Instructor/Evaluators by imposing a requirement that such persons also be qualified as Line Pilots . . . This requirement is a blatant effort by United to eliminate all instructors over the age of 65," and alleging violations of the ADEA and state civil rights acts, wrongful discharge, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, and interference with prospective economic advantage) *with* Compl. ¶¶ 27-52 (alleging that "Defendant ALPA knew that persons . . . would not be qualified to hold similar positions at United because of the arbitrary requirement, supported by Defendant ALPA, that Flight Instructor/Evaluators be subject to termination at age 65," and alleging violations of the ADEA, breach of contract, breach of the duty of fair representation, and tortious interference with a business expectancy). On June 10, 2014, the Honorable Charles P. Kocoras of the Northern District of Illinois granted United's motion "to stay Proceedings Until Related Case is Joined." (ECF No. 8–3, Def's. Mot. to Transfer Ex. 2 (Notif. Of Dkt. Entry, *Bader v. United Airlines, Inc.*, No. 14–cv–02589))

On June 12, 2014, ALPA filed a motion to transfer this case to the Northern District of Illinois "for the convenience of the parties and the witnesses" and "in the interest of justice" under 28 U.S.C. § 1404(a). Plaintiffs oppose transfer, arguing that the policy of discrimination emanated from ALPA's headquarters in Washington, D.C., that the Illinois case is not substantially related to this case, and that Plaintiffs' choice of forum should not be disturbed. (ECF No. 11-1, Pls.' Opp'n 1-2, 5-7)

II. **LEGAL STANDARD**

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized,

3

case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that transfer of the action is proper. *Devaughn v. Inphonic, Inc.,* 403 F. Supp. 2d 68, 71 (D.D.C. 2005).

In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer." *Barham v. UBS Fin. Servs.,* 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

### III.  VENUE IN THE NORTHERN DISTRICT OF ILLINOIS

Before the Court transfers an action to another venue, the defendant must show that the plaintiff could have brought the action in the proposed transferee district. 28 U.S.C. § 1404(a); *Devaughn,* 403 F. Supp. 2d at 71 (citing *Van Dusen,* 376 U.S. at 622). Plaintiffs do not seriously contest that they could have brought their ADEA claims against ALPA in the Northern District of Illinois, 29 U.S.C. § 626(c)(1) and 28 U.S.C. § 1331, and Plaintiffs have in fact brought similar ADEA claims against United in the N.D. Ill. Complaint.[1]  Venue is also proper because "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Illinois, 28 U.S.C. § 1391(b)(2). Plaintiffs concede that ALPA conducted meetings regarding the UPA and LOA within the Northern District of Illinois and that "some records are stored" there. (ECF No. 11-1, Pls.' Opp'n 4)  The United Master Executive Council ("United MEC")—the ALPA committee that actually negotiated the agreements—is located in Rosemont,

---

[1] The Court commits to the sound discretion of its sister court in the Northern District of Illinois whether to entertain Plaintiffs' pendent state law claims. *Davis v. Am. Soc'y of Civil Eng'rs*, 290 F. Supp. 2d 116, 123 (D.D.C. 2003).

Ill., within the Northern District of Illinois; ALPA and United signed the agreements in Chicago; and the agreements are administered by ALPA staff in Rosemont. (ECF No. 8-5, Schleder Decl. ¶¶ 3-10) Venue is therefore proper in the Northern District of Illinois, as Plaintiffs could have brought the case there.[2]

## IV. THE BALANCE OF PUBLIC AND PRIVATE INTERESTS

The second step in considering whether to transfer venue requires the Court to determine whether considerations of convenience and the interest of justice support transfer. In doing so, the Court weighs a number of private interest and public interest factors. *See Devaughn,* 403 F. Supp. 2d at 72.

**A. Private Interest Factors.**

The Court considers six private interest factors when deciding whether to transfer a case:

> "1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and 6) the ease of access to sources of proof."

*Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012).

Courts ordinarily give substantial deference to the plaintiff's choice of forum. *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 (D.D.C. 2008). This deference is diminished when the plaintiff does not choose their "home forum," and "where there is an insubstantial factual nexus between the case and the plaintiff's chosen forum, deference to the plaintiff's choice of forum is ... weakened." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n,* 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (citations omitted); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its

---

[2] ALPA "maintains permanent and significant offices" in the Northern District of Illinois (ECF No. 8-1, Def's. Mot. to Transfer 6), which is sufficient to establish jurisdiction and venue as to ALPA in this case. 28 U.S.C. §§ 1391(b)(1) and (c).

5

home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable.") (internal quotation marks and citations omitted); *Pac. Maritime Ass'n v. NLRB,* 905 F. Supp. 2d 55, 60–61 (D.D.C. 2012).

In the instant case, none of the Plaintiffs reside in the District of Columbia—they are residents of Colorado, Kentucky, and Arizona. In their response to defendant's motion, Plaintiffs do not address ALPA's correct observation that because none of the Plaintiffs reside in the District of Columbia, Plaintiffs' choice of forum should not be entitled to the customary level of deference. As Plaintiffs readily admit, their only basis for bringing their suit in this district is because ALPA is headquartered here. (ECF No. 11-1, Pls.' Opp'n 5) This is not enough to create a substantial factual nexus between Plaintiffs' complaint and the District of Columbia. While Plaintiffs attempt to establish a nexus by now alleging that they challenge general ALPA "policies" which originated at ALPA headquarters, their Complaint is limited to allegations concerning the UPA and the age provisions contained in the LOA. These agreements were negotiated, executed, and are administered within the Northern District of Illinois. Therefore, given the insubstantial nexus between this case and the District of Columbia, Plaintiffs' choice of forum is not entitled to significant deference.

Second, the Court considers defendant's choice of forum. ALPA has proffered legitimate reasons for preferring the Northern District of Illinois. The office of ALPA's United MEC, the body which governs the pilots ALPA represents at United, is located within the Northern District of Illinois. (ECF No. 8-5, Schleder Decl. ¶¶ 2-3) As noted above, the factual allegations in this case also have some nexus to the Northern District, while Plaintiffs have alleged minimal connection to the District of Columbia.

6

The third factor, where the claims arose, also favors transfer. Plaintiffs' claims arose primarily in the Northern District of Illinois. Plaintiffs do not dispute that ALPA's United MEC (as well as United) is located in the Northern District, and that the staff and files of the United MEC are located there. (ECF No. 8-5, Schleder Decl. ¶¶ 3-4, 9) Plaintiffs also do not dispute that the LOA itself was at least partially negotiated in Chicago, and that ALPA and United executed the LOA in Chicago. (*Id.* at ¶¶ 7, 10) Plaintiffs' assertion that certain broad ALPA policies may have been developed at ALPA's Washington headquarters has limited relevance to where the actual claims arose, which was within the Northern District of Illinois.

The convenience of the parties does not weigh in favor of either venue. The ALPA is based in the District of Columbia, but the United MEC which administers the UPA and LOA is based in Rosemont, Ill. As Plaintiffs accurately note, Plaintiffs will have to travel either way, regardless of whether this suit is maintained in the District of Columbia or in the Northern District of Illinois. *Oceanic Exploration Co. v. Conocophillips, Inc*., No. 04-332, 2007 WL 420186, at *3 (D.D.C. Feb. 5, 2007). However, the Court notes that the Northern District of Illinois is closer to the Plaintiffs than the District of Columbia.

The fifth factor, the convenience of the witnesses, favors transfer. In considering this factor, the Court considers "the availability of compulsory process to command the attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48, 53 (D.D.C. 2000). Plaintiffs allege that "[m]ost of the ALPA employees that Plaintiffs anticipate will be witnesses are in the District of Columbia or travel here regularly" (ECF No. 11-1, Pls.' Opp'n 10), but do not identify or give examples of any individual or category of witnesses they may wish to call. By contrast, ALPA identifies by name and title at least 14 witnesses (including non-party witnesses) with potentially relevant

7

information who reside or work in the Northern District of Illinois. (ECF No. 8-5, Schleder Decl. ¶¶ 11-13) The Northern District of Illinois has subpoena power over those witnesses, *see* Fed. R. Civ. P. 45, and the cost of obtaining attendance of those witnesses would be significantly reduced were the case to be tried in the Northern District. While Plaintiffs are correct that ALPA has not shown that these witnesses would be unwilling to testify in this district, *FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006), this factor still favors transfer given that the only witnesses who have been identified would benefit from a transfer, as they all live or work in the Northern District of Illinois.

The last private interest factor—the ease of access to sources of proof—is largely neutral, given the portable nature of modern discovery. *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 36 (D.D.C. 2002) ("the location of documents, given modern technology, is less important in determining the convenience of the parties"). Nonetheless, as noted above, the files of the United MEC and United (as well as Continental's negotiation files) are all located in Rosemont or Chicago. (ECF No. 8-5, Schleder Decl. ¶¶ 3-4)

### B. Public Interest Factors

Having found that the private interest factors all either favor transfer or are neutral, the Court now considers the public interest factors: "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote v. Chu,* 858 F. Supp. 2d 116, 123 (D.D.C. 2012) (citing *Ravulapalli v. Napolitano,* 773 F. Supp. 2d 41, 56 (D.D.C. 2011)).

Plaintiffs concede that "[a]ll federal courts are equally familiar with and capable of interpreting the ADEA and the related state-law claims raised by Plaintiffs." (ECF No. 11-1,

8

Pls.' Opp'n 10)  More importantly, the pendency of the Illinois action covering largely the same issues as the present case dictate that transfer is appropriate in the interest of judicial economy and efficiency.[3]  Plaintiffs are suing both ALPA and United for violations of the ADEA and related state law claims based on the same factual allegations—that ALPA and United executed the LOA which allegedly discriminated against Plaintiffs on the basis of age and resulted in them losing their jobs as Flight Instructor/Evaluators.  While Plaintiffs may be correct that their claims against ALPA and United do not necessarily rise and fall together, that is largely irrelevant to the Court's inquiry.  The cases are based on the same or largely overlapping set of operative facts, will likely involve much overlapping evidence, and there is no compelling reason that two related cases should be tried separately in different forums (a fact tacitly acknowledged by the Court in the Northern District of Illinois when it granted United's motion "to stay Proceedings Until Related Case is Joined").  *See Tice v. Pro Football, Inc.*, 812 F. Supp. 255, 257 (D.D.C. 1993) ("It is pointless to keep separate two highly related cases").

Lastly,[4] Plaintiffs argue there is no local interest in maintaining this suit in Chicago or Washington, but that the only local interest is to the three plaintiffs themselves, none of whom reside in either district.  (ECF No. 11-1, Pls.' Opp'n 11)  While the outcome of this case could have an impact on the ALPA as an organization, ALPA correctly points out that there is some

---

[3] Ordinarily, in the event of multiple lawsuits regarding the same facts filed by the same plaintiff, the D.C. Circuit follows a "first-filed" rule, meaning "[w]hen lawsuits involving the same controversy are filed in more than one jurisdiction, the general rule is that the court that first acquired jurisdiction has priority." *Biochem Pharma, Inc. v. Emory Univ.,* 148 F. Supp. 2d 11, 13 (D.D.C. 2001) (citing *Columbia Plaza Corp. v. Sec. Nat'l Bank,* 525 F.2d 620, 627 (D.C. Cir. 1975)).  However, the D.C. Circuit "views this 'first-filed' concept as a guide, not a rule, and requires weighing equitable considerations in determining whether to transfer a case." *Villa v. Salazar*, 933 F. Supp. 2d 50, 54 (D.D.C. 2013) (citing *Columbia Plaza Corp.,* 525 F.2d at 627–29).  While the present case was filed three days before the Illinois case, given the strong nexus to the Northern District of Illinois and minimal nexus to the District of Columbia, the "first-filed" rule in this case should logically give way to other equitable considerations.

[4] As for the second public interest factor, Plaintiffs offer no evidence to rebut ALPA's claim that cases take slightly longer on average from filing to disposition in this district than in the Northern District of Illinois, aside from claiming that this Court does not have a backlog of cases.  (ECF No. 11-1, Pls.' Opp'n 11)  This Court's caseload is sufficient to make the "relative congestion" factor neutral at best.

local interest in the outcome of the case in the Northern District of Illinois, as United's headquarters are located in Chicago and the disposition of this case could have some impact on its employees. (ECF No. 8-1, Def's. Mot. to Transfer 14-15)

After weighing the various factors applicable to a transfer motion, the Court finds that the public and private interests either favor transfer or are neutral. Therefore, in its discretion, the Court finds that the "consideration[s] of convenience and fairness" and "the interest of justice" in this case, particularly given the factual connection to the Northern District of Illinois and the case already pending there, weigh in favor of transfer to the Northern District of Illinois under 28 U.S.C. § 1404(a).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** ALPA's motion to transfer. An appropriate Order accompanies this Memorandum Opinion.

Date: August 8, 2014

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge